IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **CITY BANK,** | § | |
| Plaintiff, | § § § | |
| v. | § | EP-09-CV-96-KC |
| **COMPASS BANK,** | § § § | |
| Defendant. | § § § | |

*- consolidated with -*

| | | |
|---|---|---|
| **COMPASS BANK,** | § § | |
| Plaintiff, | § § | |
| v. | § § | |
| **ADELINA V. SAMBRANO,** individually and as Independent Executor of the ESTATE OF HUMBERTO F. SAMBRANO, Deceased; and CITY BANK, | § § § § § § § | |
| Defendants. | § § | |

## ORDER

On this day, the Court considered the Motion to Intervene as Third Party Plaintiff (the "Miller Motion"), filed by J. Marshall Miller ("Miller"), who is the trustee for the bankruptcy estates of the Sambrano Corporation ("SamCorp") and certain members of the Sambrano family. For the reasons set forth below, the Miller Motion is **GRANTED** in part.

**I.      BACKGROUND**

A complete recitation of the facts of this case will await another day. For the purposes of this order, it is sufficient to note the following: SamCorp was a general contracting business founded by the Sambrano family. *See* Pl. City Bank's First Amended Compl. ("City Bank Compl.") ¶ 7 (Doc. No. 17). It financed its operations, in part, by obtaining revolving lines of credit from banks, including a $3,000,000 line of credit from City Bank, obtained in 2005, and a $4,000,000 line of credit from State National Bank, predecessor to Compass Bank, obtained in 2007. *See* City Bank Compl. ¶¶ 7-8, 12; *see also* First Amended Compl. for Judicial Foreclosure by Compass Bank ("Compass Bank Compl.") ¶¶ 8-9. Certain members of the Sambrano family executed personal guarantees of repayment for, *inter alia*, both the City Bank loan and the State National loan. *See* City Bank Compl. ¶¶ 9, 14; Compass Bank Compl. ¶¶ 10-12. Certain members of the Sambrano family also, at various points, pledged or attempted to pledge certain privately-held (or allegedly privately-held) assets in support of the State National loan to SamCorp; notably, for present purposes 7,500 shares of Bank of the West stock and the contents of a brokerage account (collectively, the "Disputed Assets"). *See* City Bank Compl. ¶¶ 22, 24; Compass Bank Compl. ¶¶ 12-14.

SamCorp defaulted on both loans. The banks called the defaults in the middle of January 2008 and commenced collection efforts shortly thereafter. *See* City Bank Compl. ¶¶ 19, 21, 25; Compass Bank Compl. ¶¶ 13-17. As part of its collection efforts, Compass Bank seeks to foreclose on the Disputed Assets, liquidate them, and apply the proceeds to the debt owed to it by SamCorp. Compass Bank Compl. ¶ 16. City Bank objects to this plan on the theory that the pledges of the Disputed Assets were ineffective when purportedly done, or alternatively that they constituted fraudulent transfers which may be set aside by the Court. City Bank Compl. ¶¶22-25, 29; *see also* Miller Mot. ¶ 2. Compass Bank objects to City Bank's pursuit of this claim,

arguing that, because SamCorp and the relevant members of the Sambrano family are currently in bankruptcy proceedings, City Bank no longer has standing to bring fraudulent transfer claims. *See generally* Compass Bank's Motion to Dismiss City Bank's Texas Uniform Fraudulent Transfers Act Claims ("Compass Bank 12(b)(1) Mot.") (Doc. No. 45). City Bank avers that only the bankruptcy trustee has such standing now, because any recovery of assets would be for the benefit of the bankruptcy estates (and the creditors of those estates) at large. *Id.*

In light of the foregoing, bankruptcy trustee Miller has moved to intervene in the instant case in order to properly assert any relevant fraudulent transfer claims and ensure that any recoveries are properly distributed to the relevant bankruptcy estates. *See* Miller Mot. ¶ 5. Compass Bank has opposes Miller's intervention. *See* Compass Bank's Objection to the Motion to Intervene ("Compass Bank Miller Obj.") ¶¶ 5-6. In response to those objections, Miller argues that such intervention is both necessary and proper. *See generally* Marshall Miller, Chapter 7 Trustee's Resp. to Obj. as Third Party Plaintiff ("Miller Resp.") (Doc. No. 60).

## II.   DISCUSSION

### A.   Standard

Third parties may intervene in a pending lawsuit. *See* FED. R. CIV. P. 24. That intervention may be had as of right or may be made on a permissive basis, depending on the circumstances. *Id.* Intervention as of right is available when either (1) a federal statute gives a party an unconditional right to intervene, or (2) the party seeking to intervene satisfies the following four part test:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the

suit.
*Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007) (citing FED. R. CIV. P. 24(a)(2)). All of these "requirements must be met, or a party may not intervene as of right." *Bibles v. City of Irving*, No. 3:08-CV-1795-M, 2009 WL 2252510, at *1 (N.D. Tex. Jul. 28, 2009). But if they are met, then a "court *must* grant a motion for leave to intervene." *Id.* (emphasis in original).

To determine whether an application for intervention is timely, as required by the first element of the test set forth above, a court must examine these four subsidiary factors: (1) The length of time during which the would-be intervenor actually knew of, or should have known of, his interest in the case; (2) the prejudice that the existing parties may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he knew of, or as soon as he should have known of, his interest in the case; (3) the prejudice that the would-be intervenor may suffer if he is not permitted to join; and (4) the existence of unusual circumstances. *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977).

### B. Miller's Proposed Intervention

Miller has petitioned this Court to intervene in the instant case as of right. *See* Miller Mot. ¶ 5 (citing FED. R. CIV. P. 24(a)(2)).[1] Miller must therefore satisfy the four part test set forth in *Haspel & Davis*. Additionally, the timeliness prong of the *Haspel & Davis* test must be examined using the four part test set forth in *Stallworth*.

#### 1. Timely application for intervention

To satisfy the first prong of the *Haspel & Davis* test, the application to intervene must be

---

[1] The actual text of that paragraph reads "pursuant to FRCP (a)(2)." The Court views this as a typographical error, and finds that it is obvious that Miller was attempting to cite to Rule 24(a)(2).

timely. That is determined with reference to the *Stallworth* test. The Fifth Circuit has held that "absolute measure of timeliness should be ignored," and that the timeliness test "is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to appear sooner." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). In light of these considerations, the four prongs of the *Stallworth* test are discussed below.

### a. How long did Miller possess actual or constructive knowledge?

The first part of the *Stallworth* test asks how long the proposed intervenor knew of, or should have known of, his right to intervene. *Stallworth,* 558 F.2d at 264. Actual knowledge is not needed, and a court may start counting time from when the proposed intervenor should reasonably have learned of his interest in the case. *Id.* Under this standard, this Court must conclude that Miller had at least constructive knowledge of his interest in this case from the moment he assumed his role as bankruptcy trustee, as Compass Bank's plans to foreclose on the Disputed Assets were the subject of litigation before SamCorp and the Sambranos even entered bankruptcy. *See* Pl.'s Orig. Compl. (Doc. No. 1) and City Bank's Orig. Answer and Countercl. ¶ 32 (Doc. No. 16) in case EP-08-CV-280-KC. Miller admits that he was appointed as trustee to represent the estate of at least one member of the Sambrano family on August 10, 2009, which was over five months before he filed the instant Motion. Miller Resp. ¶ 6.

Miller argues that the "voluminous nature of the Sambrano cases and the documents involved" precluded his earlier discovery of the need to intervene. *Id.* But this is not a credible argument. The instant litigation is closely linked to the key events surrounding the collapse of SamCorp and the bankruptcy of the corporation and its individual guarantors. *See generally* Compass Bank Compl. Even the most cursory examination of the pleadings, particularly the

City Bank Complaint, would have quickly revealed the presence of fraudulent transfer claims, which are of perennial interest to a bankruptcy estate. *See* City Bank Compl. ¶ 29 (displaying the words "fraudulent or transfer"[2] in boldfaced, underlined text). Indeed, Miller did not have to sift through the voluminous transactional records of SamCorp and the Sambranos in order to discover these colorable fraudulent transfer claims – he should have discovered them through an ordinary review of pending litigation. Had the City Bank Complaint not highlighted this theory, there would be some practical merit to Miller's contentions that the presence of voluminous records make it unreasonable to assume instant discovery of these potential claims. But, given the presence of these pleadings, such excuses have little weight. Accordingly, the Court concludes that, for the purposes of this test, Miller should have known of the potential for these claims very shortly after he was appointed as trustee in the Sambrano bankruptcies. Given the activity that has taken place in this case, Miller's five-month delay in moving for intervention does not weigh in favor of a finding of timeliness.

### b. Prejudice to other parties caused by late intervention

The second prong of the test inquires into the prejudice that permitting a late intervention might cause to the other parties. *Stallworth*, 558 F.2d at 265. Compass Bank argues that it will suffer prejudice from the delay in Miller's attempt to assert his fraudulent transfer claims. *See* Compass Bank Miller Obj. ¶ 5. While prejudice may arise through a number of mechanisms, Compass Bank cannot argue that it will be prejudiced by surprise. Compass Bank

---

[2] The Court understands this to be a misprint of "fraudulent or improper transfer," and finds that, even in mis-printed form, the essential meaning of the text is unambiguous. An earlier version of City Bank's pleadings has this text in correct form. *See* City Bank's Orig. Answer and Counterclaim ¶ 32 (Doc. No. 2).

has long been apprised of the facts and legal theories surrounding the fraudulent transfer claims that Miller now wants to bring, because City Bank has been pressing such claims in this litigation since at least March 13, 2009. *See* City Bank Orig. Answer and Countercl. ¶ 32. Compass Bank therefore has had ample time to engage in discovery and conduct legal research on the issues surrounding the Disputed Assets. Not only has it had the opportunity to do so, it has evidently done so with vigor. *See generally* Compass Bank 12(b)(1) Mot. (seeking dismissal of City Bank's fraudulent transfer claims for purported lack of standing); *see also* Compass Bank's Mot. for Summ. J. ¶¶ 13-16 (Doc. No. 44) (seeking judgment as a matter of law against of City Bank's fraudulent transfer claims).

     Another potential source of prejudice is delay, and the Court is sensitive to this issue as a general matter. In the instant case, though, it cannot be given too great a weight. While some inconvenience may be caused by potential future delays occasioned by Miller's intervention, Compass Bank has pointed to no special factors which would explain why a delay at this point would be unusually prejudicial. Certainly, this case is not at a stage in its proceedings where an intervention would cause severe practical disruption, such as at or after trial. Compass Bank has not suggested that evidence or witnesses will be rendered unavailable due to a delay. Finally, the Court believes that the delay to the instant case caused by Miller's intervention would likely be slight. This is because of the likelihood that this intervention will result in these claims being returned to bankruptcy court. City Bank, for its part, has agreed to Miller's proposed intervention. *See generally* Stip. Between City Bank and Bankr. Trustee Miller (Doc. No. 68). Accordingly, the Court concludes that the prejudice to other parties in allowing Miller to intervene would only be moderate at most.

          **c.**     **Prejudice to would-be intervenor if request not granted**

Prejudice is a factor in assessing timeliness, and the traditional rule assumes that there is a greater potential for prejudice to parties seeking to intervene as of right, when compared with parties seeking to intervene permissively. *Stallworth*, 558 F.2d at 265-66. Miller argues that there is significant potential for prejudice to the interests of the relevant Sambrano bankruptcy estates, and thus the creditors of those estates, if he is not permitted to intervene. *See* Miller Resp. ¶¶ 5, 7. This is true, in part because Compass Bank has also urged this Court to dismiss City Bank's fraudulent transfer claims for lack of standing. *Id.* Indeed, Compass Bank is trying to have it both ways – it seeks to prevent both City Bank and Miller from bringing these fraudulent transfer claims, which would leave nobody in court to advocate for the rights of the bankruptcy estates and thus protect the interests of the general creditors of those estates. This would circumvent the ends of justice, and, if these claims are indeed meritorious, result in an undue windfall for Compass Bank as it forecloses on property that, by rights, should be put to the benefit of others. Accordingly, the Court concludes that the prospect of prejudice to the intervenor, and all the various interests he represents, is high if intervention is not permitted.

### d.     Unusual circumstances

The final prong inquires into any unusual circumstances that exist in a case. *Stallworth*, 558 F.2d at 266. Such circumstances exist in this case. First, Miller is not seeking to intervene on his own behalf; as a bankruptcy trustee he serves to represent the interests of a potentially large number of general creditors and other interested parties in the estates he oversees. Thus, while he is only one party, he should be seen as representing numerous interests, which adds some extra weight to concerns regarding prejudice to him. On a related note, because this issue is connected with ongoing bankruptcy proceedings, there is a high likelihood that Miller's intervention would lead to litigation in bankruptcy court and not in this forum, which could

potentially dispose of these issues without unduly burdening this Court's consideration of the other claims at issue. *See* Miller Resp. ¶ 5.

### e. Conclusions regarding timeliness

After due consideration of the four elements discussed above, the Court concludes that Miller's request to intervene was, on balance, timely. Though the time between when Miller first should have learned of his interest in this case and the filing of his Motion seems unduly long, and there is some potential for prejudice to the other parties, the remaining two factors tip the balance in favor a finding of timeliness. The potential for significant prejudice to befall the interests Miller represents, should he not be allowed to intervene, suggest that this request should not be denied as untimely. Moreover, though a delay caused by allowing an intervention might cause prejudice, the unusual circumstances in this case suggest that such a delay might well be avoided. Accordingly, the first prong of the *Haspel & Davis* test is satisfied in favor of intevention.

### 2. Miller's interest in the property at issue

Turning to the second prong of the *Haspel & Davis* test, Compass Bank argues that the "Trustee fails to identify the nature of the interest he seeks to protect." Compass Bank Miller Obj. ¶ 5. This contention is nearly nonsensical. Miller has specifically informed the Court that he "seeks to intervene as third party plaintiff" because he would "show that to the extent that there were any fraudulent transfers . . . a recovery of assets . . . would be the property of the bankruptcy estates" – which he administers. Miller Mot. ¶ 5. Moreover, none other than Compass Bank itself has averred strenuously that the fraudulent transfer "cause of action belongs to the bankruptcy trustee." Compass Bank 12(b)(1) Mot. ¶ 10. That there are at least colorable fraudulent transfer claims at issue in this case is beyond dispute – City Bank initially made such

claims, and there was not even an attempt to dismiss them under Rule 12(b)(6) for failure to state a claim. *See* City Bank Compl. ¶ 29. Miller's interest in the fraudulent transfer claims and the Disputed Assets, at the very least, is perfectly clear from the record. Accordingly, the Court finds that the second prong of the *Haspel & Davis* test is satisfied.

### 3. Will disposition of the instant case impede Miller's interest?

Moving on to the third prong, there is no argument that the disposition of the instant case, without Miller's presence, could easily impede the interests that Miller seeks to protect. Compass Bank is seeking judicial foreclosure of the Disputed Assets, and permission to liquidate them and apply the proceeds to the amounts it is owed under the State National line of credit extended to SamCorp. *See* Compass Bank Compl. ¶ 16. If Compass Bank succeeds on this claim, Miller will clearly lose out, as those assets will be disposed of and the proceeds not sent to the bankruptcy estates – where they might belong. While it is possible that City Bank could prevail on its fraudulent transfer claims and then properly return the Disputed Assets to the bankruptcy estates, the fact remains that Compass Bank is actively opposing City Bank's standing on this question. If nobody is left in the case to argue this side, then the chances that Miller's interest will be impeded can only increase. Given that Compass Bank intends to foreclose on the Disputed Assets, liquidate them, and gain judicial approval to apply the proceeds to the amount it is owed by SamCorp, it appears as if there will be no second chances for Miller to recover these assets if he does not do so at this time. Accordingly, the Court finds that the disposition of the instant case could very easily impede Miller's interests if he is not allowed to intervene, and that this factor of the *Haspel & Davis* test is also satisfied.

### 4. Miller's interests are inadequately represented by others in the suit

Compass Bank argues that the "rights of the trustee have been well represented and

protected by City Bank and its counsel in their aggressive attempts to block judicial foreclosure" and that, until Miller "shows why City Bank has failed to properly and adequately represent those same interests in this suit to date, [his] intervention should be denied." Compass Bank Miller Obj. ¶¶ 6-7.  This is an argument by misdirection, and the Court is not fooled.  City Bank's past vigor – or efforts "to date" – in pursuing the fraudulent transfer claim is secondary to the issue of whether it will continue to adequately represent Miller's interests in the forthcoming stages of this case.  It is a party's "ultimate objective" which is the test of whether one party's interests coincide sufficiently with another's to ensure adequately representation – not the party's history of past efforts.  *See Haspel & Davis*, 493 F.3d at 579.

Compass Bank does not address this forward-looking aspect, and the facts on this subject are extremely unflattering to its case.  Compass Bank has vigorously put forward a set of colorable arguments as to why City Bank's claims on this subject should be dismissed for lack of standing.  *See generally* Compass Bank 12(b)(1) Mot.  Miller has reminded the Court of this fact in strong terms.  *See* Miller Resp. ¶ 7.  The Fifth Circuit has observed that, while "the burden for establishing inadequate representation is on the applicant for intervention," this burden is "minimal, and is satisfied if the applicant shows that representation of his interest may be inadequate."  *Haspel & Davis*, 493 F.3d at 579 (internal citations and quotation marks omitted).  Thus, due to the simple chance that these arguments would be deemed meritorious once examined by this Court – resulting in City Bank being unable to further assert these claims – it is clear that City Bank's representation might end prematurely, than thus it "may be" inadequate to protect Miller prospectively.

Moreover, even if Compass Bank does not prevail on that point, and even if the Court completely disregards the issue of Compass Bank's 12(b)(1) Motion for the time being, there are

still sufficient reasons to conclude that City Bank does not adequately represent Miller's interests. The "ultimate objective" of City Bank is to recover money to set against the unpaid debt owed to it by SamCorp. Miller's ultimate objective, by contrast, is to recover money on behalf of all general creditors of the bankruptcy estates. These objectives are potentially in direct conflict, because every dollar that City Bank recovers on its own account is a dollar that might have gone into a Miller-administered estate to be shared by a number of creditors; thus, City Bank's efforts to maximize its own position could easily minimize Miller's recovery.

For all of the foregoing reasons, then, Miller has satisfied the last prong of the *Haspel & Davis* test.

### 5. Conclusions regarding the *Haspel & Davis* test

In light of the analysis set forth above, the Court finds that Miller has satisfied the four prongs of the *Haspel & Davis* test. Accordingly, Miller may intervene in this case as of right.

### C. Form and forum of intervention

It is clear that Miller may enter this case to pursue the fraudulent transfer claims at issue. Further, the Court observes that there is a significant likelihood that Miller's intervention in this case should take place in a bankruptcy court. There are two principle reasons to support this conclusion. First, Miller himself has expressed an intent to pursue these claims in such a forum. *See* Miller Resp. ¶ 5. Second, precedent demonstrates that fraudulent transfer claims under these sorts of circumstances should be resolved in bankruptcy court. *See Sabre Techs., L.P. v. TSM Skyline Exhibits, Inc.*, No. H-08-CV-1815, 2008 WL 4330897, at *5 (S.D. Tex., Sept. 18, 2008) (holding that "claims" involving "fraudulent transfers . . . should be resolved by the bankruptcy court").

The Court also observes that Rule 24(c) requires that a motion to intervene be

accompanied by a "pleading that sets out the claim or defense for which intervention is sought." FED. R. CIV. P. 24(c). While Miller has made reference to the existing fraudulent transfer claims urged by City Bank, he has apparently not filed or served a formal "pleading" which fully sets forth his intended claims.[3] *See generally* Miller Mot. Such a pleading is critical in defining the scope and nature of the claims that Miller intends to bring. Despite the fact that Miller has not complied with the requirements of Rule 24(c) in his Motion, the Court adopts a "lenient approach" to this issue, finding that it can resolve the basic question of Miller's standing to intervene, given the present record, and have the required Rule 24(c) pleadings filed at a later time. *See Liberty Surplus Ins. Cos. v. Slick Willies of Am., Inc.*, No. H-07-CV-706, 2007 WL 2330294, at *1 (S.D. Tex. Aug. 15, 2007) (endorsing and adopting such an approach). Thus, while it is clear that Miller should be allowed to intervene in this case, this Court will only grant Miller's Motion in the structured manner and to the extent set forth below, given the state of the pleadings and the probability that these claims will be referred back to the bankruptcy court.

## III. CONCLUSION AND ORDERS

For the foregoing reasons, the Court finds that J. Marshall Miller may intervene in the instant case as of right under Rule 24(a)(2). The Court also finds (1) that Miller has not yet filed and served a formal set of pleadings as required by Rule 24(c); and (2) that, given what is known so far, Miller's intervention would likely lead to a referral of his claims back to the bankruptcy court.

Accordingly, Miller's Motion is **GRANTED** in part and the Court makes the following orders:

---

[3] Curiously, given its strenuous objections to Miller's intervention, Compass Bank has failed to point out explicitly this Rule 24(c) issue in its briefing.

1. J. Marshall Miller is hereby **ORDERED** to file and serve pleadings, as per the requirements of Rule 24(c), no later than two (2) weeks from the date of this Order.

2. As the Court is of the opinion that Miller's claims should probably be referred to the bankruptcy court, all parties are hereby **ORDERED** to file and serve any objections they might have to such a referral no later than one (1) week after the pleadings described in paragraph (1), above, are served on them. Such objections shall not exceed five (5) pages in length.

3. Any party which favors a referral to bankruptcy court shall have the right to file and serve a response to any objections made pursuant to paragraph (2), above. Such a response shall not to exceed five (5) pages in length and shall be made no later than one (1) week after the paragraph (2) objections are made.

4. No other filings on this question shall be permitted.

**SO ORDERED.**

**SIGNED** on this 6th day of April 2010.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE